NOTICE
Decision filed 10/14/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190155-U

NO. 5-19-0155

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| TANYA S. STORM, | ) | Bond County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 16-D-18 |
| | ) | |
| JOSHUA W. STORM, | ) | Honorable |
| | ) | Ronald R. Slemer, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Overstreet and Wharton concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court did not abuse its discretion in dividing the only marital asset equally between the parties.

¶ 2   In October 2017, the circuit court of Bond County entered a written judgment dissolving the marriage of petitioner, Tanya S. Storm (n/k/a Tanya S. Kunkel), and respondent, Joshua W. Storm. In January 2019, the court entered a supplemental judgment resolving all remaining issues, including the division of marital property, debts and attorney fees. Joshua appeals, arguing that the court erred in dividing the only marital asset, Joshua's workers' compensation settlement, equally between the parties. We affirm.

1

¶ 3                                    I. Background

¶ 4     This appeal follows three years of protracted and acrimonious dissolution of marriage litigation. There were numerous disputes regarding the parties' minor children and various instances where each party sought, and was granted, an order of protection against the other. To the extent possible, we limit our recitation of the facts to those pertinent to the issue raised on appeal.

¶ 5     The parties were married on October 1, 2005, and established a marital home in Montgomery County, Illinois. They have two minor children: T.N.S., who was born in 2004, and J.N.S., who was born in 2009. During the marriage, Joshua worked and provided financial support for the family while Tanya cared for the parties' minor children. Both parties struggled with drug addiction throughout their marriage and filed for bankruptcy in 2008.

¶ 6     In 2012, Joshua sustained a work-related injury and filed a workers' compensation claim, which remained pending for several years. The claim was still pending when the parties separated in November 2015. Tanya moved into her father's residence in Bond County, and Joshua remained at the marital residence in Montgomery County.

¶ 7     On February 23, 2016, while the workers' compensation claim remained pending, Tanya filed a petition to dissolve the parties' marriage in Bond County. Tanya alleged that irreconcilable differences had occurred between the parties, and that both parties were currently unemployed. Joshua filed a hand-written, *pro se* answer to Tanya's petition for dissolution on March 23, 2016. Joshua alleged that he planned to hire an attorney and have the divorce case moved to Montgomery County, where there was a pending order of

2

protection case against Tanya. Joshua also attached various filings and orders from the order of protection case, which indicated that the Montgomery County circuit court had awarded Joshua temporary custody of the parties' minor children and established a visitation schedule for Tanya.

¶ 8 On April 8, 2016, the Bond County circuit court entered a written order granting Joshua a 30-day continuance to seek counsel. The court also incorporated into its order the portions of the Montgomery County circuit court's order relating to child custody and visitation. The court subsequently granted the parties' joint motion to continue the divorce case until the order of protection case concluded in Montgomery County.

¶ 9 On June 29, 2016, the divorce case resumed in Bond County. Following a hearing where both parties appeared with counsel, the circuit court entered a written order denying Joshua's motion to transfer the divorce case to Montgomery County. The court also ordered the parties to participate in mediation to resolve any issues regarding their children.

¶ 10 On August 5, 2016, Tanya filed for, and was granted, an emergency order of protection against Joshua in Bond County (16-OP-57). As a result, the circuit court awarded Tanya temporary custody of the children pending further hearing. On the same date, Tanya filed a petition for modification of temporary custody, maintenance and support, as well as a petition for a home study. Tanya alleged that she was currently unemployed but was seeking employment and that Joshua was employed but had provided her no financial support since their separation.

¶ 11 On August 9, 2016, Tanya obtained part-time employment as a sales associate at Goodwill in Litchfield, Illinois. The following day, the circuit court held a hearing on

3

Tanya's petition regarding temporary matters. Tanya was present at the hearing with counsel but neither Joshua nor his attorney appeared, and the matter was reset for hearing on August 17, 2016.

¶ 12    On August 17, 2016, Joshua filed the following: a counterpetition for dissolution of marriage; a counterpetition for temporary relief; an answer to Tanya's petition for dissolution; an answer to Tanya's petition for modification of temporary custody, maintenance and support; and a financial affidavit. In his filings, Joshua claimed that he was employed by Illinois Asphalt and Paving, while Tanya remained unemployed despite having the ability to work. Joshua also claimed that his gross monthly income was $2000.

¶ 13    The circuit court also held a hearing on August 17, 2016, and entered an order on August 19, 2016; however, neither the transcript from the hearing nor the court's order have been included in the record on appeal. The court summarized the August 17, 2016, hearing, as well as its rulings, when it addressed all remaining temporary matters in a written order entered on September 19, 2016. The court specifically noted in the September 19, 2016, order that the hearing held on August 17, 2016, "centered around who was the best parent and what was in the best interests of the children." The court also noted that, on August 19, 2016, it denied the plenary order of protection and ordered that "the custody return to the status quo prior to the entry of the Order of Protection in Bond County."

¶ 14    In addressing the remaining temporary matters in the September 19, 2016, order, the circuit court found that the children had resided with Joshua before Tanya filed for the order of protection (16-OP-57). The court also found that both parties had engaged in extensive drug use and were involved "in a drug culture." While the court recognized that

4

Tanya had admitted to her drug use and entered counseling, the court concluded that the evidence was insufficient to show it was in the best interest of the children to modify parenting time or to make any determinations concerning the financial issues.

¶ 15　The circuit court subsequently ordered the parties to attempt mediation and to attempt to agree on a guardian *ad litem* (GAL). Shortly thereafter, Tanya filed a petition for leave to appeal, which was denied by this court on October 25, 2016.

¶ 16　On November 6, 2016, Tanya was promoted to a "Team Leader" at Goodwill and her employment increased to full time. As a result, Tanya received documents indicating that she was eligible for insurance benefits beginning February 1, 2017, and would begin accruing paid time off. Tanya's annualized estimated earnings were $17,160.

¶ 17　On July 3, 2017, following months of disputes relating to the parties' children, the circuit court held a hearing on temporary matters. The court ruled that the parties would alternate weekly visitation with the children during the summer, but that Tanya would have "primary parenting responsibility concerning school" during the school year with Joshua having "liberal visitation, including weekend visitation." The court also ordered Joshua "to undergo a drug/alcohol evaluation and comply with all recommended treatment," and Tanya to follow-up with her recommended counseling and treatment.

¶ 18　On July 27, 2017, Tanya filed an emergency *ex parte* motion to restrict Joshua's parenting time. Tanya alleged that Joshua had failed to complete the drug and alcohol evaluation, and that Joshua's attorney had been unable to contact him since the July 3, 2017, hearing. Tanya also alleged that she feared for the safety of her children because an emergency order of protection had been issued against Joshua in Montgomery County (17-

5

OP-169) following an alleged altercation with his girlfriend. The circuit court entered an order immediately terminating Joshua's parenting time with the children, but shortly thereafter, the court entered an order allowing Joshua to exercise supervised parenting time with Tanya's approval.

¶ 19 On October 6, 2017, the circuit court entered a written order dissolving the parties' marriage. In the order, the court noted that Joshua had recently settled his workers' compensation claim and the proceeds, once received, would not be disbursed from Joshua's attorney's trust account. While the court's order does not list the exact amount of the settlement proceeds, the parties' subsequent filings indicate that the claim was settled for $35,887.37 but the remaining balance after the deduction of costs and attorney fees was $28,392.47.

¶ 20 Over the course of the next year, the parties exchanged discovery and numerous petitions, motions and orders were filed in the case. These filings include the following: a petition to intervene filed by Lisa Madigan on behalf of the Illinois Department of Healthcare and Family Services; an order granting the petition to intervene; a petition for rule to show cause for indirect civil contempt and request for attorney fees filed by Tanya; a motion for contribution of attorney fees and costs filed by Joshua; an amended motion for contribution of attorney fees and costs filed by Joshua; and a temporary order granting Joshua supervised visitation with the children.

¶ 21 A hearing on all remaining issues, including the division of the parties' marital property, debts and attorney fees, was set for November 21, 2018. Both parties filed positions statements prior to the hearing. The parties agreed that Joshua's workers'

6

compensation settlement, valued at $28,392.47, was marital property, and that the settlement was the only marital asset. The parties further agreed that the main issue before the circuit court was the division of the workers' compensation settlement, which required consideration the factors set forth in section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act). 750 ILCS 5/503(d) (West 2018). After reviewing each statutory factor in her position statement, Tanya claimed she was entitled to a larger portion of the settlement because she had custody of, and provided all financial support for, the parties' minor children. Joshua claimed that he was entitled to the entire settlement because he had substantial debts and difficulties obtaining employment due to his work-related injury. Joshua specifically argued that the entire settlement "should be allocated to his debt and the priority of said debts should be an award of attorney fees and expenses to his attorney, Monroe D. McWard, of approximately $24,500.00." Joshua also prepared an updated financial affidavit, dated November 20, 2018.

¶ 22    On November 21, 2018, the case proceeded to hearing on all remaining issues. The parties briefly discussed Joshua's updated financial affidavit before presenting evidence. Joshua's updated financial affidavit listed a net monthly income of $200 for part-time labor and no monthly expenses. The affidavit listed numerous debts, totaling over $100,000. Tanya did not prepare an updated financial statement, due to the parties' "extremely simple economic situation." According to Tanya, Joshua's updated financial affidavit unnecessarily complicated the issues by listing decade-old debts. The parties stipulated to the following: Tanya received custody of the children in July 2017; Joshua paid no child support after July 2017; and Joshua had not completed counseling or treatment.

¶ 23    Tanya testified to the following details at the hearing. She was currently employed at Goodwill and had been employed there for the last two years. She worked approximately 30 hours per week at a rate of $10.50 per hour, and her net monthly income ranged from $800 to $900. Tanya had no monthly rent or vehicle payments because she lived with her father and used his vehicle for transportation. She did pay for gas, groceries and other expenses relating to childcare. Tanya received state assistance, which included a medical card for the children's healthcare and roughly $150 per month for food. Joshua provided no monetary support for the children and rarely appeared for his weekly supervised visitation with the children. Tanya estimated that she incurred $30,000 in attorney fees during the course of the dissolution proceedings. She had paid most of the attorney fees with her father's assistance but still owed $1000 to $2000. Tanya did not believe that her father expected reimbursement.

¶ 24    Joshua then testified to the following details. He currently lived with his father in Montgomery County, although it was a "tentative situation" with no lease agreement. Joshua confirmed that his monthly income for part-time labor was approximately $200 and that he had no monthly expenses. He had not been gainfully employed since 2017. He had a "permanent 25 to 30[-]pound weight limit" restriction due to his work-related injury, which made it difficult for him to find employment. When asked if he could perform "a cash register job" at a gas station, Joshua replied, "[e]ven those types of applications once you write down that you had a Workman's [*sic*] Comp[ensation] claim and you're on that type of limit, you can barely carry a bag of ice." Joshua claimed that he consistently looked

8

for work and submitted five job applications every week. He admitted that he did not have a valid driver's license or vehicle, which had hindered his efforts.

¶ 25　On cross-examination, Joshua admitted that he had worked for Illinois Paving in 2016 and earned a monthly income of $2000. Joshua drove a truck for Illinois Paving but was laid off several months after obtaining the job. Joshua believed that he was unable to obtain gainful employment due to his current condition but admitted that he had not filed for Social Security disability benefits. When asked how he planned to support himself, Joshua responded, "I'm not sure yet."

¶ 26　Joshua also testified regarding the numerous debts listed in his updated financial affidavit. On cross-examination, Joshua acknowledged that his previous financial affidavits from August 2016 and October 2017 did not include most of the debts he listed in his updated affidavit. It was also established that a majority of the debts listed in Joshua's updated affidavit had been discharged in bankruptcy, leaving the following: (1) a $4500 debt to Joshua's uncle for loans received during the marriage; (2) a $24,423.25 debt to Joshua's attorney for his representation in the dissolution and order of protection proceedings; (3) a $23,192.32 debt to Loan-Preferred Capital for a loan received after Tanya filed for divorce; (4) a $3576 debt to Montgomery County for certain fees and costs associated with various felony and misdemeanor cases brought against Joshua; and (5) a $13,900 debt to the "Landers Trust" for a default judgment entered against Joshua. Joshua admittedly received the $4500 loan from his uncle before filing for bankruptcy but did not list the loan as a debt on the bankruptcy schedule. Joshua intended for his uncle and attorney to be paid out of his workers' compensation settlement and had signed agreements

9

to that effect. The circuit court clarified that Joshua's attorney had been paid for the work he performed in accruing the workers' compensation settlement.

¶ 27 During closing arguments, Tanya's counsel specifically addressed the factors outlined in section 503(d) of the Act and initially requested that the circuit court award Tanya 50% of the workers' compensation settlement. In support, Tanya's counsel noted that Tanya had provided all of the financial support for the parties' minor children since July 2017. Tanya's counsel then asked that the court award Tanya 75% of the settlement to offset present and future unpaid child support. Joshua's counsel requested that the court award Joshua 86% of the settlement due to his substantial debts and inability to obtain gainful employment.

¶ 28 Following closing arguments, the circuit court took the matter under advisement. The court expressed that it would review the relevant caselaw prior to issuing a ruling.

¶ 29 On January 14, 2019, the circuit court entered a written order on the remaining issues, finding, in pertinent part, as follows:

> "The Court has had ample contact with the parties. It has considered their testimony and believability.
>
> *** Drugs have been a problem in this relationship. Tanya has undergone an evaluation and treatment. Joshua has not and was placed on felony probation the Summer of 2018 on a drug charge in another county. The previous determination of parenting time remains in effect until Joshua undergoes an evaluation and treatment.
>
> Neither party is solely responsible for the extended litigation and animosity. It causes them to lose track of the need their children have for two parents. It is hoped that Joshua will deal with his drug problems. Each party is responsible for their own attorney fees.

Joshua is unemployed. Tanya works at Goodwill. The parties have very little in personal property and are to keep what is in their possession. Neither party is seeking maintenance.

The parties have incurred debt. Joshua did not notify Tanya of one lawsuit and permitted a default judgment. Joshua also claims debts to an uncle. Each party is responsible for the debt, promissory notes, or judgments in their individual name. They are jointly and severally liable for any other joint debt.

The primary asset is Joshua's work comp settlement. *** The settlement is clearly an asset and the only real asset of the marriage. The remainder is to be divided equally. However, the amount of $660 is to be deducted from Joshua's portion as past child support."

¶ 30 On January 16, 2019, Joshua filed a motion to reconsider and supporting memorandum, arguing that the circuit court erred in awarding Tanya 50% of the workers' compensation settlement. According to Joshua, the court abused its discretion by dividing the workers' compensation settlement without considering the following: the parties' marital debts and assets; the pain and suffering Joshua suffered from the accident; Joshua's future physical disability; and Joshua's difficulties with future employment.

¶ 31 On February 20, 2019, the circuit court entered a written order denying Joshua's motion to reconsider. In the written order, the court noted that it had considered all relevant factors. The court specifically noted that it had considered the ages of both the parties and their children, the parties' respective employment opportunities, as well as Joshua's lack of believability in relation to all aspects of the case. The court found that "[t]his might be the only opportunity for [Joshua] to provide any funds in light of his substance abuse and felony conviction."

¶ 32 On February 27, 2019, Joshua filed a second motion to reconsider, arguing that the circuit court erred in awarding Tanya 50% of the workers' compensation settlement. On

11

March 1, 2019, Tanya filed a motion to strike and request for sanctions, arguing that Joshua's second motion to reconsider merely restated his first motion to reconsider. Tanya also argued that there was no statutory or common law basis for Joshua to file the second motion, and that he was attempting to delay the proceedings to harass her into settling for less than half of his workers' compensation settlement. Also, on March 1, 2019, Tanya filed a motion to compel and request for sanctions, arguing that Joshua's attorney had not responded to her demands for the funds the court awarded Tanya in its January 14, 2019, order. Tanya's motion also alleged that the funds were being held in Joshua's attorney's trust account.

¶ 33    The circuit court denied Joshua's second motion to reconsider by docket entry on March 4, 2019. On March 22, 2019, Joshua filed a motion for approval of security and to stay enforcement of judgment pursuant to Illinois Supreme Court Rule 305 (eff. July 1, 2017).

¶ 34    On April 10, 2019, the circuit court held a hearing on Tanya's motion to compel and request for sanctions and entered a written order granting Joshua's motion for approval of security and to stay enforcement of judgment. The court, without addressing whether Joshua's notice of appeal would "be timely filed," ordered that Joshua, or his attorney, "shall cause" a notice of appeal to be filed on or before April 17, 2019. The court also ordered that Joshua's attorney transfer the funds from Joshua's workers' compensation settlement, which were previously awarded to Tanya on January 14, 2019, from the trust account to a separate account. The court further ordered that Joshua's attorney immediately transfer the segregated funds to Tanya if Joshua or his attorney failed to file a notice of

12

appeal by April 17, 2019. Lastly, the court denied Tanya's motion to compel and request for sanctions.

¶ 35 On April 16, 2019, Joshua filed a notice of appeal from the circuit court's January 14, 2019, order, which "divided [Joshua's] Workers' Compensation award in half."

¶ 36                                     II. Analysis

¶ 37 Although neither party raises the issue, we must first consider whether we have jurisdiction to decide this appeal. See *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) ("A reviewing court must ascertain its jurisdiction before proceeding in a cause of action, regardless of whether either party has raised the issue."). Specifically, we must determine whether Joshua filed a timely notice of appeal.

¶ 38 It is well settled that "[t]he timely filing of a notice of appeal is both jurisdictional and mandatory." *Id.* Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017) provides in pertinent part:

> "The notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely posttrial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order, irrespective of whether the circuit court had entered a series of final orders that were modified pursuant to postjudgment motions. A judgment or order is not final and appealable while a Rule 137 claim remains pending unless the court enters a finding pursuant to Rule 304(a)."

"No request for reconsideration of a ruling on a postjudgment motion will toll the running of the time within which a notice of appeal must be filed under this rule." Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017).

¶ 39    Section 2-1203(a) of the Code of Civil Procedure (Code) provides that a party in a nonjury case may file a postjudgment motion within 30 days after the entry of the challenged judgment or within such further time the court grants within the 30 days or any extensions therefore. 735 ILCS 5/2-1203(a) (West 2018). A postjudgment motion is "a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." *Id*. Each party may make only one postjudgment motion directed at a judgment that is otherwise final. Ill. S. Ct. R. 274 (eff. Jan. 1, 2006).

¶ 40    Motions for sanctions brought pursuant to Illinois Supreme Court Rule 137 "must be filed within 30 days of the entry of final judgment, or if a timely post-judgment motion is filed, within 30 days of the ruling on the post-judgment motion." Ill. S. Ct. R. 137(b) (eff. July 1, 2013). Unlike postjudgment motions, "Rule 137 motions deal with the propriety of filings in the underlying action" and "are claims in the underlying litigation ***." *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 342 (2001). Our supreme court has reasoned that "a notice of appeal need not be filed until after the disposition of a motion for sanctions" because "a notice of appeal may not be filed until after the [circuit] court has finally disposed of all claims." *Id.*

¶ 41    Here, the circuit court entered the order awarding each party 50% of the workers' compensation settlement on January 14, 2019, and Joshua filed a postjudgment motion to reconsider on January 16, 2019. Joshua's motion was filed within 30 days of the court's

14

January 14, 2019, order and, thus, was timely filed under section 2-1203(a) of the Code. Joshua's timely filed postjudgment motion tolled the time for filing the notice of appeal to this court under Rule 303(a)(1). The court entered an order denying Joshua's postjudgment motion to reconsider on February 20, 2019, thereby resetting the 30-day time period for filing a notice of appeal to this court. Joshua filed a second postjudgment motion to reconsider on February 27, 2019. Joshua's second postjudgment, although filed within 30 days of the court's February 20, 2019, order, was impermissible under Rule 274 and did not toll the time for filing a notice of appeal under Rule 303(a)(2). However, Tanya filed two separate motions requesting sanctions on March 1, 2019. Tanya's motions were filed within 30 days of the circuit court's February 20, 2019, order and, thus, were timely filed under Rule 137. Because Tanya's Rule 137 claims remained pending, the court's January 14, 2019, order was not yet final and appealable under Rule 303(a)(1). In other words, Joshua could not file a proper notice of appeal until the court disposed of Tanya's Rule 137 motions. See *John G. Phillips & Associates*, 197 Ill. 2d at 342 (reasoning that "a notice of appeal need not be filed until after the disposition of a motion for sanctions" because such motion is a claim and "a notice of appeal may not be filed until after the [circuit] court has finally disposed of all claims").

¶ 42 The circuit court denied Joshua's second postjudgment motion to reconsider by docket entry on March 4, 2019. Although not entirely clear, the record indicates that the court disposed of Tanya's motion to strike and request for sanctions when it denied Joshua's second postjudgment on March 4, 2019. Tanya's motion to compel and request for sanctions remained pending when Joshua filed his motion for approval of security and

15

to stay enforcement of judgment on March 22, 2019. A docket entry from April 10, 2019, indicates that the court allowed Joshua's motion to set security and, in doing so, impliedly denied Tanya's motion to compel payment and request for sanctions on April 10, 2019. On April 16, 2019, Joshua filed a notice of appeal from the circuit court's January 14, 2019, order. Because Joshua filed a notice of appeal within 30 days of the court's April 10, 2019, order disposing of Tanya's motion to compel payment and request for sanctions, Joshua's notice of appeal was timely filed. Thus, this court has jurisdiction to entertain this appeal and we now turn to the merits.

¶ 43 The sole issue on appeal is whether the circuit court erred in dividing the only marital asset—Joshua's workers' compensation settlement valued at $28,392.47—equally between the parties. Joshua asserts that the court's award of 50% of the settlement to Tanya was both an abuse of discretion and against the manifest weight of the evidence. Joshua also maintains that the court failed to consider the relevant factors set forth in section 503(d) of the Act, along with the evidence of his unemployment and significant debts. We disagree.

¶ 44 A reviewing court will uphold a circuit court's division of marital property absent a clear abuse of discretion. *In re Marriage of Stone*, 155 Ill. App. 3d 62, 72 (1987). A court abuses its discretion where "no reasonable person would take the view adopted by the [circuit] court." *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 651 (2008). Where a court's division of marital property is based on factual findings, a reviewing court will not reverse the court's decision unless the court's findings are against the manifest weight of the evidence. *In re Marriage of Vancura*, 356 Ill. App. 3d 200, 205 (2005). A factual finding

16

is against the manifest weight of the evidence where " 'the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence.' " *Heroy*, 385 Ill. App. 3d at 663 (quoting *In re Marriage of Matchen*, 372 Ill. App. 3d 937, 946 (2007)).

¶ 45 Pursuant to section 503(d) of the Act, a circuit court "shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including": (1) the parties' respective contributions to the acquisition, preservation, or increase or decrease in value of the marital or nonmarital property; (2) the dissipation of marital property by either party; (3) the value of the property assigned to each party; (4) the duration of the parties' marriage; (5) the relevant economic circumstances of each party; (6) the parties' respective obligations from prior marriages; (7) any prenuptial or postnuptial agreements between the parties; (8) each party's age, health, occupation, amount, and sources of income, employability, job skills, liabilities, and needs; (9) the custodial provisions for the parties' children; (10) whether the apportionment is in lieu of or in addition to maintenance; (11) the reasonable opportunity of each party for future earning or income; and (12) the tax consequences of the property division. 750 ILCS 5/503(d) (West 2018); see also *In re Marriage of Faber*, 2016 IL App (2d) 131083, ¶ 41.

¶ 46 Here, we cannot say that the circuit court abused its discretion in awarding each party 50% of the workers' compensation settlement. Contrary to Joshua's assertion, the record demonstrates that the circuit court considered the relevant section 503(d) factors in dividing the marital property. The statutory factors were discussed at length in the parties' respective position statements filed shortly before the hearing. The parties also discussed

17

the relevant factors during closing arguments at the hearing. While the court did not specifically reference the section 503(d) factors in its January 14, 2019, order, the court clearly considered the economic circumstances of each party in its order. Moreover, the court expressly stated that it considered the factors in its February 20, 2019, order denying Joshua's first motion to reconsider. Thus, we reject Joshua's assertion that the court failed to consider the relevant section 503(d) factors.

¶ 47    After carefully reviewing the record, we also cannot say that the circuit court abused its discretion in equally dividing the parties' marital property. It was undisputed that the parties owned no real estate and had little personal property. The parties' only marital asset of value was the workers' compensation settlement. The evidence showed that Tanya had provided all financial support for the children after she was awarded custody in 2017. The court considered the employment status of each party, noting that Tanya was employed at Goodwill and Joshua was unemployed. While Joshua testified regarding his numerous debts and his difficulties in obtaining future employment due to his work-related injury, the court did not find him credible. The record provides ample support for the court's credibility determination. The court further considered the proffered evidence relating to the parties' liabilities, including the debts and attorney fees incurred by each party. After considering the evidence, the court ordered that the parties were equally responsible for any joint debts; however, each party was responsible for their individual debts and attorney fees. In light of the foregoing, we cannot say that no reasonable person would take the view adopted by the court.

¶ 48   In sum, we conclude that the circuit court properly considered the relevant factors and evidence in dividing the only marital asset equally between the parties. Thus, we cannot say that the court abused its discretion in awarding each party 50% of Joshua's workers' compensation settlement.

¶ 49                              III. Conclusion

¶ 50   For the foregoing reasons, we affirm the judgment of the circuit court of Bond County.

¶ 51   Affirmed.